**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AZZOUBAIR ELMEJJATI, TARIK ELGHARNITI, LOTFI LIAZIDI, MOHAMED MENKARI, and MOHAMED FADLI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BLACKLANE NORTH AMERICA INC.,<br><br>Defendant. | No. ___________________<br><br>JURY DEMANDED |

**CLASS ACTION COMPLAINT**

Plaintiffs Azzoubair Elmejjati, Tarik Elgharniti, Lofti Liazidi, Mohamed Menkari, and Mohamed Fadli, on behalf of themselves and all others similarly situated, bring this class action against Defendant Blacklane North America Inc. ("Blacklane") for violations of Massachusetts law.

## I. INTRODUCTION

1. Plaintiffs and other Class Members are limousine drivers for Blacklane in Massachusetts.

2. Plaintiffs and Class Members worked for Blacklane, often through intermediary employers that Blacklane calls "Local Service Providers" ("LSPs").

3. Limousine drivers working under the intermediary LSPs are Blacklane employees under Massachusetts law.

4. Blacklane has unlawfully avoided paying overtime wages, business expenses, and other benefits in violation of Massachusetts law.

5. Blacklane has also violated Massachusetts law by withholding gratuities from Plaintiffs and other Class Members and by imposing monetary penalties on Plaintiffs and Class Members in the form of unlawful deductions from their wages.

## II. PARTIES

6. Plaintiff Azzoubair Elmejjati is an individual residing in Revere, Massachusetts. Plaintiff Elmejjati has worked as a limousine driver for Blacklane since around 2023.

7. Plaintiff Tarik Elgharniti is an individual residing in Malden, Massachusetts. Plaintiff Elgharniti has worked as a limousine driver for Blacklane since around April 2025.

8. Plaintiff Lotfi Liazidi is an individual residing in Boston, Massachusetts. Plaintiff Liazidi has worked as a limousine driver for Blacklane since around 2016.

9. Plaintiff Mohamed Menkari is an individual residing in Peabody, Massachusetts. Plaintiff Menkari has worked as a limousine driver for Blacklane since around 2014.

10. Plaintiff Mohamed Fadli is an individual residing in Methuen, Massachusetts. Plaintiff Fadli has worked as a limousine driver for Blacklane since around August 2023.

11. Defendant Blacklane North America Inc. is a foreign corporation with its principal place of business at 111 Town Square Place, Suite 1203, Jersey City, New Jersey 07310.

12. At all material times, Blacklane actively and continuously conducted and advertised its business in Massachusetts.

## III. JURISDICTION AND VENUE

13. Jurisdiction is proper under 28 U.S.C. § 1332(d) because the amount in controversy exceeds $5,000,000; the Class Members reside in a state different from that of Blacklane; and there are more than 100 putative class members.

14. Venue is proper under 28 U.S.C. § 1391(b)(2) because many of the events underlying this action occurred in this judicial district.

## IV. FACTS

15. Blacklane is a transportation company that provides limousine services across the United States, including in Massachusetts.

16. Customers can order limousine services through Blacklane's mobile phone application and website, https://www.blacklane.com.

17. Blacklane advertises its business as a "Chauffeur Service," including on the Apple App Store.

18. According to its website, "Blacklane's limousine service fleet can be tailored to fit a variety of needs: our regular Business Class vehicle can be used for either as a simple A-to-B journey or hired by the hour for maximum flexibility on the part of the passenger." *See* https://www.blacklane.com/en/limousine-service/ (last visited May 8, 2026).

19. On its Instagram page, Blacklane posts the tagline, "[T]he global chauffeur service."

20. Drivers who want to work for Blacklane must apply through Blacklane's "Onboarding Portal."

21. All drivers must complete Blacklane's mandatory training program before providing services to customers.

22. Blacklane's training modules cover topics such as "Chauffeur Values – Prioritize Safety" and "Reviewing Rides and Waiting Time Policy."

23. Each Blacklane training module requires the driver to watch a video and take a test about the module's content.

24. The driver must pass the test to access the next training module.

25. Drivers must complete all training modules before Blacklane will offer them work assignments.

26. Blacklane's driver training programs continue past the onboarding process.

27. Drivers "[r]eceive regular performance updates and gain access to continually updated training modules." *See* https://partner-help.blacklane.com/en/articles/8420677-what-does-it-mean-to-become-a-blacklane-partner (last visited May 8, 2026).

28. When driving for Blacklane, Plaintiffs and Class Members must adhere to Blacklane's numerous "Operational Guidelines" and standards.

29. Plaintiffs and the Class Members must also comply with Blacklane's "Quality Standard."

30. For example, Blacklane's Quality Standard bars drivers from taking cash, asking for tips, and soliciting Blacklane customers for further business.

31. Blacklane's Quality Standard also requires drivers to wear a "dark suit, button-up shirt, tie, and polished shoes," perform all accepted rides, and "[i]nspect the vehicle after drop-off to remove any trash, clean spots, etc."

32. Blacklane also expects its drivers to perform an 11-point vehicle inspection before each ride.

33. Blacklane uses its unilateral control to set other policies detrimental to Plaintiffs and the Class Members.

34. For example, Blacklane offers customers "complimentary wait time"—that is, unpaid time for the driver—of up to "one hour for airport and long-distance train station pickups, and 15 minutes for all other pickups." *See* https://help.blacklane.com/en/articles/2693285-am-i-charged-for-additional-wait-time-if-my-chauffeur-arrives-early (last visited May 8, 2026).

35. Plaintiffs and Class Members frequently drive passengers to the airport, for them to board interstate and international flights. In fact, Blacklane has entered into agreements with airlines to facilitate passengers beginning or completing their interstate journeys with rides to and from the airport using Blacklane drivers. These rides are booked directly through the airlines, and they are marketed and booked as part of a single, integrated travel package that includes both air and ground transportation.

36. Blacklane requires drivers to wait up to 90 minutes after the scheduled pickup time for international flight arrivals, 60 minutes for domestic flight arrivals, and 30 minutes for pickups within Boston.

37. Blacklane also allows customers to modify their booking at any time, including during the trip. *See* https://help.blacklane.com/en/articles/2693231-what-do-i-do-if-i-booked-a-ride-with-the-wrong-pickup-or-dropoff-location (last visited May 8, 2026) ("If you have already passed the 60 minutes threshold or you are already in the vehicle, please inform the chauffeur about the route change.").

38. Blacklane has also unilaterally established a customer cancellation policy that allows customers "to cancel their ride free of charge up until 1 hour before the scheduled pickup time." *See* https://help.blacklane.com/en/articles/3810157-what-is-the-cancellation-policy-and-how-can-i-cancel-my-ride (last visited May 8, 2026). Drivers were not compensated for the time they spent driving to pick up a customer who canceled a ride more than an hour in advance.

39. Although these modifications may result in more work for the driver, Blacklane—and not the driver—decides whether to charge the customer for the additional services.

40. Drivers who refuse to perform services pursuant to the customer's modifications violate Blacklane's rules and are subject to monetary penalties.

41. To ensure that drivers comply with its "Operational Guidelines," "Quality Standard," "Vehicle Checklist," and other policies, Blacklane imposes monetary penalties on drivers for a variety of "incidents"—that is, noncompliance with its policies, rules, and standards.

42. Under its current "incident" policy, Blacklane imposes a monetary penalty equal to 100% of the associated fare if the driver requests a cash payment, subcontracts the trip to another driver or vehicle, solicits the guest for further business, discloses private information, engages in "harmful behavior," drives dangerously, or fails to pick up the customer.

43. Blacklane may terminate drivers for recurring or severe incidents.

44. Incidents that result in a monetary penalty equal to 50% of the associated fare include poor driving, mechanical issues, arriving more than five minutes late to the pickup, missing a baby seat, and failing to confirm a ride 45 minutes ahead of the pickup.

45. Arriving less than five minutes late, having bad manners, having an unprofessional conversation, not following special requests, and using a damaged, dirty, or smelly vehicle result in a monetary penalty equal to 25% of the associated fare.

46. Blacklane also imposes monetary penalties on drivers who cancel a scheduled ride without adequate notice.

47. Blacklane refers to driver cancellations as "give backs."

48. Under its current "give back" policy, "the following cost-recovery amounts are applied based on when the ride is returned":

| **Time of give-back (before original pickup time)** | **Cost recovery (% of original ride price)** |
|---|---|
| 24 hours or more | 0% |
| 6–24 hours | 20% |

| | |
|---|---|
| 2–6 hours | 40% |
| 45 minutes to 2 hours | 60% |

49. For example, "[i]f the ride pickup time is 9 a.m. on Sunday and the ride was given back at 6 a.m. on Sunday, a 40% cost recovery would apply."

50. Penalties appear in the driver's next monthly pay statement.

51. Besides monetary penalties, Blacklane uses its work assignment process to ensure that Plaintiffs and Class Members comply with Blacklane policies and provide high-quality services.

52. Blacklane posts available work assignments to two virtual job boards.

53. One job board lists fixed-pay assignments, while the other functions as a reverse auction.

54. Which job board a driver can access depends on the driver's rating.

55. Customers are prompted to rate their driver using a five-star scale after each ride.

56. Drivers rated at least 4.9 stars over the last 90 days can access the fixed-pay job board.

57. The first driver who accepts the fixed pay assignment on the job board receives the work.

58. For this reason, Plaintiffs and other class members must constantly monitor the fixed-pay job board to gain access to economically feasible fares.

59. Drivers with a rating below 4.9 stars must "bid" on work assignments in a reverse auction, with the assignment going to the driver who accepts the lowest pay.

60. Because the reverse auction process drives down the pay amount, drivers strive to maintain a rating of at least 4.9 stars so that they receive fixed-pay work assignments.

61. The number of "offerings" that each driver receives from Blacklane also depends on the driver's total number of "give backs"—that is, cancellations—and "incidents"—that is, violations of Blacklane's operating guidelines.

62. By its own admission, Blacklane designed its work assignment system "to incentivize better planning and scheduling for our chauffeurs, ultimately leading to improved service delivery and higher guest satisfaction."

63. In other words, Blacklane uses its work assignment system to control the quality of services that Plaintiffs and other Class Members provide.

64. Blacklane also sets all prices and controls the entire payment process.

65. For example, despite telling customers that tips, gratuities, or tolls are included, Blacklane does not remit any tips, gratuities, or tolls to the driver.

## V. CLASS ALLEGATIONS

66. Plaintiffs bring this action individually and on behalf of the following class:

> All individuals who have performed transportation services on behalf of Blacklane in the Commonwealth of Massachusetts during the applicable time period.

67. Plaintiffs and the Class Members have uniformly been misclassified as independent contractors or users of a software platform.

68. The Class is so numerous that their individual joinder into a single action is impracticable.

69. Although the exact number of Class Members cannot be properly determined without further discovery, the number and identity of the Class Members can easily be ascertained from Blacklane's records.

70. Based on the allegations above, there are questions of law and fact that affect and are common to all Class Members. The central questions of law and fact involved in this action are of a common or general interest.

71. Common legal and factual issues predominate over any questions affecting only individual Class Members.

72. Plaintiffs' claims are typical of the claims of other Class Members.

73. Plaintiffs performed the same work and seek the same categories of damages as all Class Members.

74. Plaintiffs are committed to vigorously prosecuting this action because Blacklane has caused them to suffer actual losses.

75. Plaintiffs have retained qualified counsel, experienced in class action practice.

76. A class action is the superior method available for the fair and efficient adjudication of this controversy. Because the damages suffered by individual Class Members may be relatively small, in comparison with the expense and burden of individual litigation, it is impracticable for members of the Class to seek redress individually for the wrongful conduct herein alleged.

77. Were each member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the Court.

78. The prosecution of separate actions would also create the risk of inconsistent rulings, which may be dispositive of the interest of Class Members who are not parties to the adjudication and may substantially impede Class Members' ability to protect their interests and, therefore, would be contrary to the interest of justice and equity.

## ADMINISTRATIVE EXHAUSTION

79. On May 22, 2026, Plaintiffs filed wage complaints with the Massachusetts Attorney General's Office.

## COUNT I
**Reimbursement of Business Expenses**

80. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

81. Plaintiffs and similarly situated drivers are employees of Blacklane under Massachusetts law.

82. Blacklane has violated the Massachusetts Wage Act, Mass. Gen. Laws ch. 149 § 148, by causing drivers to bear business expenses necessary to perform their work without reimbursement, including but not limited to gas and car maintenance, insurance, and supplies such as smartphones and data plans.

## COUNT II
**Unlawful Deductions**

83. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

84. Plaintiffs and similarly situated drivers are employees of Blacklane under Massachusetts law. *See* Mass. Gen. Laws ch. 149, § 148B.

85. Blacklane has violated Mass. Gen. Laws ch. 149, §§ 148 and 150, and Mass. Gen. Laws ch. 151, § 1 *et seq.*, by imposing unlawful deductions and improper setoffs against wages earned by Plaintiffs and similarly situated drivers.

**COUNT III**
**Massachusetts Tip Law**

86. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

87. Blacklane has violated Mass. Gen. Laws ch. 149, § 152A by failing to remit all tips or gratuities to Plaintiffs and similarly situated drivers.

**COUNT IV**
**Overtime**

88. Plaintiffs reallege by reference all allegations in all preceding paragraphs.

89. As employees of Blacklane under Massachusetts law, Plaintiffs and similarly situated drivers were entitled to an overtime premium for hours worked beyond 40 per week.

90. Blacklane has violated the Massachusetts overtime statute, Mass. Gen. Laws ch. 151, §§ 1A and 7, by failing to ensure that its drivers were paid an overtime premium for hours worked beyond 40 per week.

91. For example, Plaintiff Fadli worked more than 40 hours for Blacklane during the week of April 5, 2026, but he did not receive any overtime premium for this week.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs seek the following relief:

A. An order under Federal Rule of Civil Procedure 23 certifying the class defined above, appointing Plaintiffs as the class representatives, and appointing the undersigned attorneys as class counsel;

B. Damages for all unpaid overtime and gratuities owed to Plaintiffs and similarly situated drivers;

C. Damages for all business expenses incurred by Plaintiffs and similarly situated drivers;

D. Damages for all unlawful deductions and invalid setoffs imposed on Plaintiffs and similarly situated drivers;

E. Statutory trebling of damages and liquidated damages;

F. Prejudgment interest;

G. Litigation costs, expenses, and attorneys' fees;

H. Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

Plaintiffs demand a jury trial on all claims.

Dated: June 10, 2026

AZZOUBAIR ELMEJJATI, TARIK ELGHARNITI, LOTFI LIAZIDI, MOHAMED MENKARI, and MOHAMED FADLI, on behalf of themselves and all others similarly situated,

By their attorneys,

*s/ Shannon Liss-Riordan*
Shannon Liss-Riordan (BBO #640716)
Thomas Fowler (BBO #688521)
Trevor Byrne (BBO #712898)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, Massachusetts 02116
(617) 994-5800
sliss@llrlaw.com
tfowler@llrlaw.com
tbyrne@llrlaw.com